<u>ORAL ARGUMENT HELD SEPTEMBER 26, 2014</u>
<u>AMENDED PANEL DECISION ISSUED JULY 21, 2015</u>

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| DELAWARE DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL, *et al.*, *Petitioners*, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *Respondent*. | Case Nos. 13-1093, 13-1102, 13-1104 (consolidated) |

**KANSAS POWER POOL'S RESPONSE
IN SUPPORT OF RESPONDENT'S MOTION
FOR STAY OF THE MANDATE**

Respondent-Intervenor Kansas Power Pool ("KPP") respectfully submits this response in support of the motion for stay of the mandate filed by the U.S. Environmental Protection Agency ("EPA") on July 15, 2015.[1] On May 1, 2015, the Court issued a decision in these consolidated cases vacating and remanding EPA rules for the non-emergency use of emergency reciprocating internal combustion engines ("RICE"). *Delaware Dep't of Natural Resources & Envtl.*

---

[1] Respondent's Motion for Stay of Mandate, *Del. Dep't of Nat. Resources & Envtl. Control v. EPA*, Case No. 13-1093 et al. (consolidated), July 15, 2015 ("EPA Motion").

*Control v. EPA*, 785 F.3d 1 (D.C. Cir. 2015) ("May 1, 2015 Decision"). In its May 1, 2015 Decision, the Court provided that EPA or any party to the proceeding could file a motion to delay issuance of the mandate in the event that vacatur would result in administrative or other difficulties.[2] Accordingly, EPA has requested a stay of the Court's mandate through May 1, 2016.[3]

KPP supports the requested stay. KPP is a municipal energy agency with member towns located throughout Kansas, many in rural areas. A number of these towns have RICE engines, and rely on the voltage support portions of the affected rule (40 C.F.R. § 63.6640(f)(iii)) to operate the engines for limited hours each year to avert blackouts in contingencies such as weather events and maintenance on non-redundant transmission lines.[4] There is no centralized capacity market in Kansas, nor is there any immediate prospect of one. KPP does not bid these engines into any market. KPP's concerns are thus distinct from the concerns the Court expressed in the May 1, 2015 Decision with respect to the bidding of RICE

---

[2] May 1, 2015 Decision at 18-19.

[3] EPA Motion at 13.

[4] Although pursuant to 40 C.F.R. § 63.6640(f)(1) EPA allows RICE to operate for unlimited hours in emergency situations, the relevant EPA definition of emergency at 40 C.F.R. § 63.6675, not at issue in this rulemaking, contains sufficient ambiguity that KPP sought assurance that its operations when transmission is limited would be acceptable under Section 63.6640(f)(iii). For example, there is a question in the emergency definition as to whether engines that operate as part of a "financial arrangement" are performing emergency operation. KPP reimburses its members for the fuel costs when they must operate RICE to maintain reliability in these situations.

engines into centralized capacity markets as demand response under 40 C.F.R. § 63.6640(f)(ii). Because vacatur before alternative provisions have been made for small, rural communities would increase the risk of blackouts in those communities, EPA's motion for stay should be granted, and EPA should address the Court's concern that EPA failed to consider alternatives to limit the scope of the relief for small communities.

## BACKGROUND

On May 1, 2015, this Court vacated and remanded EPA rules allowing the operation of emergency engines for up to 100 hours per year in non-emergency situations including for testing and maintenance, emergency demand response under defined circumstances, and to avoid blackouts by supporting the grid when voltage and frequency deviate by 5% or greater. On July 21, 2015, the Court amended the May 1, 2015 Decision to clarify that the allowance of up to 100 hours of use for maintenance and testing purposes is not affected.[5] As to the remainder of the provisions at issue in this case, EPA has requested a stay of the mandate through May 1, 2016 for the following four reasons:[6]

---

[5] Order Amending Opinion, ECF #1563453 (July 21, 2015) and Amended Opinion, *Del. Dep't of Nat. Resources & Envtl. Control v. EPA*, Case No. 13-1093 et al. (consolidated) (May 1, 2015, amended July 21, 2015).

[6] EPA Motion at 4-15.

3

1. to retain, at least through the summer months, a 100-hour allowance for emergency demand response in areas of the country with organized markets that may be disrupted by capacity shortages in the event that affected engines already awarded bids in those markets become unavailable;

2. to avoid adverse reliability impacts on the local grid in largely rural areas of the country lacking organized capacity markets, where small communities served by long, non-redundant and/or occasionally constrained transmission lines continue to rely on the operation of RICE for a small number of hours throughout the year to maintain voltage stability in weather events and other contingency situations;

3. to allow time to install emissions controls; and

4. to allow EPA to decide whether an additional rulemaking is appropriate to preserve certain limited reliability uses of RICE in rural areas, and to conduct such a rulemaking if appropriate.

KPP supports EPA's motion for the second, third and fourth of these reasons. KPP members rely on RICE for reliability uses in rural areas where they are served by limited transmission, and consequently would suffer hardship and the risk of blackouts if they could not rely on RICE to stabilize the grid while EPA addresses this portion of the rule on remand. In addition, to the extent that some

KPP members could afford to retrofit the RICE with controls, this work can be difficult and expensive to arrange quickly in more remote areas. Furthermore, the only objection raised by Petitioners or specifically found by this Court to this portion of the rule was EPA's failure to consider alternatives that would narrow the scope of where the 100-hour allowance could be used for these reasons.[7] Thus, a remand to address rural reliability uses of RICE is consistent with the Court's May 1, 2015 Decision.

## ARGUMENT

I. **FAILURE TO GRANT EPA'S MOTION COULD RESULT IN UNACCEPTABLE RELIABILITY IMPACTS IN KANSAS AND OTHER RURAL AREAS OF THE COUNTRY**

Absent a stay, KPP members that currently rely on emergency RICE to address voltage fluctuations would be deprived of this tool. Without these RICE, reliability would be degraded because it would be more likely that voltage fluctuations would lead to blackouts, and all the disruption and safety issues blackouts can cause. The attached Affidavit of Larry W. Holloway, Assistant General Manager for KPP, presents an example of a KPP member that relies on RICE when transmission capacity serving the town becomes constrained due to outages, weather or other reasons.[8] As Mr. Holloway explains, "Most of KPP's

---

[7] *See* May 1, 2015 Decision at 17-18.

[8] Affidavit of Larry W. Holloway, Assistant General Manager of Kansas Power Pool ("Holloway Affidavit").

5

members are served by single, non-redundant transmission lines, and many of them rely on RICE engines to keep the lights on when there are problems with those lines."[9]  The City of Wellington illustrates the dependence of these rural communities on RICE to bolster grid stability when a transmission line is compromised by storms or other contingencies.[10]  Unlike some KPP members, Wellington is fortunate to have locally sited non-RICE generation, but one of its turbines takes up to 24 hours to ramp up to full capacity.[11]  In an unexpected contingency, Wellington has no alternative but to operate its RICE until that unit can be brought on line, in order to avoid a blackout.[12]

---

[9] Holloway Affidavit ¶ 5.

[10] *Id*. ¶ 8.

[11] *Id*. ¶ 9.

[12] *Id*.  As Mr. Holloway states, it is expensive for rural utilities to operate RICE. *Id*. ¶¶ 10, 12.  As a result, KPP provides a payment to Wellington to cover the costs of fuel when Wellington must operate the units. *Id*. ¶ 10.  Wellington makes no profit off this financial arrangement, however. *Id*.  Moreover, this type of arrangement is not the one contemplated (or opposed) by Industry Petitioners et al. in their July 28, 2015 opposition to EPA's motion for stay.  Industry Petitioners et al. address their comments to the participation of engines in demand response programs, asserting that such "market participants" should install appropriate controls.  Joint Opposition at 15.  KPP members do not participate in demand response markets, are not "market participants" in the manner described by Industry Petitioners et al., and do not "receive payments as demand response resources."  *See id*.  The financial compensation that KPP members receive from KPP covers fuel costs for operating RICE and provides no financial or competitive advantage.  *See* Holloway Affidavit at ¶¶ 10, 12.

RICE thus have a narrow but essential role in maintaining reliable service in rural areas. Without a stay of the mandate, KPP's members will be unable to use RICE for that purpose. Any increase in blackouts as a result of this limitation would adversely affect the health, safety, and welfare of people and businesses in and around towns served by KPP members.

As EPA indicates in its motion for stay, the reliability events that necessitate the operation of RICE in rural communities are not limited to the summer months. The Affidavit of Mr. Holloway similarly explains:

> If the rule is vacated without addressing situations such as those faced by KPP's members including Wellington, electric customers in Wellington and other similarly situated rural towns will suffer more electrical outages than they would otherwise. Such outages can happen any time of the year in contingency events.

Thus, as distinct from questions related to heavy summer electric demand, storms and other contingencies in rural areas cannot be addressed by a stay that extends for only a few months. The full stay that EPA has requested through May 1, 2016 therefore is appropriate.

## II. THE BALANCE OF THE EQUITIES SUPPORTS REMANDING WITHOUT VACATUR

The length of stay that EPA seeks is limited to approximately nine months—barely enough time to complete a rulemaking. A nine-month stay to allow EPA to

7

clarify the status of engines in rural areas outside of organized markets is reasonable.[13]

As the Court's May 1, 2015 decision indicates, the record below supports the use of RICE by small municipal utilities to ensure reliability in transmission-constrained rural areas.[14] The record indicates that in many of these rural areas, the cost of a new power plant or retrofitted unit would be prohibitive.[15] Even if adequate funds were forthcoming for engine retrofits in these sparsely populated and income-constrained rural areas, a stay of the mandate would be necessary for the purpose of retrofits alone. As EPA's motion for stay documents,[16] rural municipalities cannot quickly secure the necessary facilities upgrades.

Mr. Holloway's Affidavit documents that RICE are very expensive for KPP's members to run. Operating RICE is significantly more expensive than the cost of the other generation upon which KPP members normally rely when the system is not constrained by transmission outages or other limitations.[17] KPP and

---

[13] KPP's interest in this proceeding is limited to the use of RICE for reliability purposes in transmission-constrained rural areas. KPP takes no position on the need for RICE in organized demand response markets.

[14] *See* May 1, 2015 Decision at 17.

[15] *See* R. Docket No. EPA-HQ-OAR-2008-0708-1051 at 3-4 (J.A. 1,931-1,932) (Comments submitted by Kansas Power Pool (August 9, 2012)).

[16] EPA Motion at 9-11 and Declaration of Melanie King ¶¶ 11-19.

[17] Holloway Affidavit ¶¶ 10, 12.

8

its members only operate these engines when there is no other choice, thus minimizing the potential emissions.[18]

### III. AN OPPORTUNITY FOR REMAND WITHOUT VACATUR FURTHERMORE IS APPROPRIATE BECAUSE THE COURT DID NOT FIND FAULT WITH THE USE OF RICE TO AVERT LOCAL GRID INSTABILITY IN RURAL AREAS

Finally, EPA's request for the time needed to potentially conduct a new rulemaking limited to issues in rural areas is consistent with the reasoning and conclusions of the May 1, 2015 Decision. Although no party to this case contested the types of reliability uses that KPP is concerned with, the Court's decision nonetheless impacts these uses. KPP's concern is the need to operate engines to maintain local reliability in rural areas when contingency events affect voltage stability, pursuant to 40 C.F.R. §§ 60.4211(f)(2)(iii), 60.4243(d)(2)(iii), and 63.6640(f)(2)(iii).

The May 1, 2015 Decision does not question EPA's decision to allow operation of emergency RICE to support the grid under specified conditions of voltage drop. On the contrary, the Court questioned only why EPA "failed to limit the 100-hour exemption to areas of the country not served by organized markets."[19] The Court recognized that "EPA received comments that exempting backup generators from emissions controls would aid reliability 'for small, rural

---

[18] *Id.*¶ 12.

[19] May 1, 2015 Decision at 17.

9

municipalities.'"[20] The Court concluded that EPA "should have" expressly considered the appropriateness of "limiting the 100-hour exemption to address the reliability needs of rural locations," and erred when it failed to do so.[21]

Having identified this flaw in EPA's decisional process, the Court should now grant EPA the time it requires to do exactly what the Court said: consider alternatives to limit the scope of a 100-hour allowance for voltage drop situations. It would be unreasonable to reject EPA's request to follow the roadmap set out in the May 1, 2015 Decision.

## CONCLUSION

In order to avoid negative impacts on reliability and harm to rural communities, the Court should grant EPA's motion for stay of the mandate until May 1, 2016.

---

[20] *Id*.

[21] *Id*. at 17-18 (citation omitted).

                                      Respectfully submitted,

                                      */s/ Lisa G. Dowden*
                                      Lisa G. Dowden
                                      Melissa E. Birchard

                                      Attorneys for Kansas Power Pool

Law Offices of:
    Spiegel & McDiarmid LLP
    1875 Eye Street, NW
    Suite 700
    Washington, DC 20006
    (202) 879-4000

July 30, 2015

# ATTACHMENT

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| DELAWARE DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL, *et al.*, <br>    *Petitioners*, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, <br>    *Respondent*. | Case Nos. 13-1093, 13-1102, 13-1104 (consolidated) |

**AFFIDAVIT OF LARRY W. HOLLOWAY**

I, Larry W. Holloway, of Wichita, Kansas, hereby declare and affirm:

1. My name is Larry W. Holloway and I am the Assistant General Manager of Kansas Power Pool (KPP), one of the respondent-intervenors in this proceeding.

2. KPP is a municipal energy agency, authorized by Kansas statutes and created by and for its members. KPP currently has 31 members, and provides power services to 23 municipal utilities in Kansas with a total load of approximately 240 MW.

3. KPP and its members are all located in the Southwest Power Pool ("SPP"), a FERC-authorized Regional Transmission Organization that does not have a mandatory, centralized capacity market.

1

4. I am submitting this affidavit in support of a stay of this Court's mandate in the above-captioned action pending EPA's further consideration of its rule in light of this Court's May 1, 2015 opinion.

5. Most of KPP's members are served by single, non-redundant transmission lines, and many of them rely on RICE engines to keep the lights on when there are problems with those lines. No petitioner challenged the rule's provisions addressing the needs of small municipal entities such as KPP's members before this court, except for EPA's failure to consider narrower alternatives, and this court did not find fault with those provisions except for EPA's failure to consider narrower alternatives.

6. KPP's members will suffer harm if the 100 hour allowance for engines is removed without making provision for small towns such as KPP's members.

7. I assume, for the purposes of this affidavit, that if the 100 hours provision is vacated, the previous 15 hour limit will be in force. Fifteen hours per year is only sufficient to keep the engines operational and to make sure utility crews can activate them in an emergency. It is insufficient for the other needs for which KPP's members rely on these engines.

8. The city of Wellington, Kansas is an example of a KPP member that would be harmed if the provision were so vacated. Wellington, Kansas is a small town with a peak load of approximately 30 MW in 2014. The town is served by a

2

single tie to the transmission grid. However, when a specific line is lost due to weather events or for other reasons, and high load conditions exist, there is a 17 MW import limit into Wellington due to grid limitations on the 69 kV line serving the Wellington tie. In reliability terms, the loss of the line for any reason creates a situation where there is no slack in the system to absorb a second contingency if one were to occur. Reliability criteria require that transmission systems be operated such that they could sustain a second contingency in such an "n-1" situation. As a result of the potential for violation of reliability criteria, SPP requires Wellington to operate internal generation to cover the remainder of its load when conditions so require. The local reliability coordinator (Westar) decides whether dispatching the Wellington generation is the most feasible solution if the conditions of concern arise.

9. Wellington primarily relies on its gas turbine and steam turbine (non-RICE units) to provide power in these conditions. However, the steam turbine requires 24 hours to ramp up to its full capacity, and the emergency conditions requiring its dispatch can arise more quickly than that. In those instances, if the gas turbine trips, Wellington relies on its RICE units to operate and help meet local load until the steam turbine can be started and placed on line. Additionally, these units are used for black start (the ability to provide power

3

during blackout conditions to other generators that may require power to start up). If Wellington were not able to rely on those generators while its steam unit is ramping up, it would have to drop customers from electric service. Blackouts would become more frequent.

10. Under its contract with KPP, Wellington receives some compensation from KPP whenever it operates its RICE units in this situation. Wellington does not make money from this arrangement. These units are expensive to operate and the KPP payments only cover Wellington's fuel costs. It is this compensation arrangement that makes 40 CFR § 63.6640(f)(iii) necessary to Wellington. Because Wellington has a "financial arrangement" with KPP for dispatch of the engines, and the engines supply power to the local Wellington system, KPP is concerned that Wellington's engines might not be able to serve the necessary functions described here absent the 100 hour provision.

11. If the rule is vacated without addressing situations such as those faced by KPP's members including Wellington, electric customers in Wellington and other similarly situated rural towns will suffer more electric outages than they would otherwise. Such outages can happen any time of the year in contingency events.

12. For Wellington and other KPP members located in rural areas, the cost of operating RICE is generally prohibitive except as a backup reliability

4

mechanism of last resort. The other generation that these towns normally rely on is significantly less expensive. As a result of this fact, together with EPA's explicit restrictions on the circumstances of operation for voltage support, there is no risk of unwarranted use resulting in undue emissions during a period of remand.

13. This information is provided to the best of my knowledge, information, and belief.

*[signature]*
Larry W. Holloway
Kansas Power Pool
Assistant General Manger – Operations

Subscribed and sworn to before me, the undersigned notary public, this 28 day of July, 2015.

*[signature]*
Notary Public

My commission expires:

LINDA L. MEYER
Notary Public - State of Kansas
My Appt. Expires 9-29-15

5

CERTIFICATE OF SERVICE

I hereby certify that I have on this 30th day of July, 2015, caused the foregoing documents to be served via U.S. mail, postage pre-paid, on:

Robert Geoffrey Dreher
U.S. Department of Justice
(DOJ) Environment & Natural
Resources Division
PO Box 23986, L'Enfant Plaza Station
Washington, DC 20026-3986

and electronically through the Court's CM/ECF system on:

Shanna Michelle Cleveland
Email: scleveland@clf.org

Valerie Melissa Edge
Email: valerie.edge@state.de.us

Aaron Michael Flynn
Email: flynna@hunton.com

David M. Friedland
Email: dfriedland@bdlaw.com

Michael J. Horowitz
Email: horowitz.michael@epa.gov

Stephanie Szu-Ping Lim
Email: sslim@kslaw.com

Ashley Charles Parrish
Email: aparrish@kslaw.com

Caitlin Sumner Peale Sloan
Email: cpeale@clf.org

Matthew E Price
Email: mprice@jenner.com

Leslie Sue Ritts
Email: lsritts@gmail.com

Austin David Saylor
Email: austin.saylor@usdoj.gov

Stephanie J. Talbert
Email: stephanie.talbert@usdoj.gov

David G. Tewksbury
Email: dtewksbury@kslaw.com

William L. Wehrum Jr.
Email: wwehrum@hunton.com

*/s/ Melissa E. Birchard*
Melissa E. Birchard

Law Offices of:
    Spiegel & McDiarmid LLP
    1875 Eye Street, NW
    Suite 700
    Washington, DC 20006
    (202) 879-4000